# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **CAROL GRES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | **SA-08-CV-0991 XR (NN)** |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:**   **Honorable Xavier Rodriguez**
       **United States District Judge**

### <u>Introduction</u>

Plaintiff Carol Gres brought this action for judicial review of the final decision of the

Commissioner of the Social Security Administration (the Commissioner), determining that Gres

is not disabled for the purposes of the Social Security Act (the Act) and denying Gres's

applications for Disability Insurance Benefits (DIB) and Supplemental Security Insurance (SSI)

benefits.  Gres asks the district court to reverse the Commissioner's decision and to render

judgment in her favor.  In the alternative, Gres asks the district court to reverse the decision and

remand the case for further proceedings.

After considering Gres's brief in support of her complaint,[1] the brief in support of the

---

[1]Docket entry # 16.

Commissioner's decision,[2] Gres's reply brief,[3] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[4]

## Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## Administrative Proceedings

Based on the record in this case, Gres exhausted her administrative remedies prior to filing this action in federal court. Gres applied for DIB and SSI benefits on August 9, 2007, alleging disability beginning on that day.[5] The Commissioner denied the applications initially and on reconsideration.[6] Gres then asked for a hearing before an ALJ.[7] An ALJ held a hearing

---

[2]Docket entry # 18.

[3]Docket entry # 19.

[4]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[5]SSA record, pp. 16 & 46.

[6]*Id*. at p. 16.

[7]*Id*. at p. 27.

on September 5, 2008.[8]  The ALJ issued a decision on September 24, 2008, concluding that Gres

is not disabled within the meaning of the Act.[9]  Gres asked the Appeals Council to review the

decision,[10] but the Appeals Council declined to review the decision on November 25, 2008,

determining no reason existed for reviewing the decision.[11]  The ALJ's decision became the final

decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C.

§ 405(g).  Gres filed this action seeking review of the Commissioner's decision on December 12,

2008.[12]

## Issue Presented

> Is the ALJ's decision that Gres is not under a "disability," as
> defined by the Act, supported by substantial evidence and does the
> decision comport with relevant legal standards?

## Analysis

### A. Standard of Review

In reviewing the Commissioner's decision denying disability benefits, the reviewing court

is limited to determining whether substantial evidence supports the decision and whether the

Commissioner applied the proper legal standards in evaluating the evidence.[13]  "Substantial

evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a

---

[8]*Id*. at p. 133.

[9]*Id*. at pp. 9-13.

[10]*Id*. at p. 5.

[11]*Id*. at p. 2.

[12]Docket entry # 3.

[13]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

reasonable mind might accept as adequate to support a conclusion."[14]  Substantial evidence

"must do more than create a suspicion of the existence of the fact to be established, but 'no

substantial evidence' will be found only where there is a 'conspicuous absence of credible

choices' or 'no contrary medical evidence.'"[15]

If the Commissioner's findings are supported by substantial evidence, then they are

conclusive and must be affirmed.[16]  In reviewing the Commissioner's findings, a court must

carefully examine the entire record, but refrain from reweighing the evidence or substituting its

judgment for that of the Commissioner.[17]  Conflicts in the evidence and credibility assessments

are for the Commissioner and not for the courts to resolve.[18]  Four elements of proof are weighed

by the courts in determining if substantial evidence supports the Commissioner's determination:

(1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians,

(3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age,

education and work experience.[19]

### 1. Entitlement to Benefits

---

[14]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[15]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[16]*Martinez*, 64 F.3d at 173.

[17]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[18]*Martinez*, 64 F.3d at 174.

[19]*Id*.

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[20]  The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[21]  A claimant shall be determined to be disabled only if her physical or mental impairment or impairments are so severe that she is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she applied for work.[22]

### 2. Evaluation Process and Burden of Proof

The Commissioner's regulations provide that disability claims are to be evaluated according to a five-step process.[23]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[24]

The first step involves determining whether the claimant is currently engaged in

---

[20]42 U.S.C. § 1382(a)(1) & (2).

[21]42 U.S.C. § 1382c(a)(3)(A).

[22]42 U.S.C. § 1382c(a)(3)(B).

[23]20 C.F.R. §§ 404.1520 and 416.920.

[24]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

substantial gainful activity.[25]  If so, the claimant will be found not disabled regardless of her

medical condition or her age, education, or work experience.[26]  The second step involves

determining whether the claimant's impairment is severe.[27]  If it is not severe, the claimant is

deemed not disabled.[28]  In the third step, the Commissioner compares the severe impairment with

those on a list of specific impairments.[29]  If it meets or equals a listed impairment, the claimant is

deemed disabled without considering her age, education, or work experience.[30]  If the impairment

is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional

capacity and the demands of her past work.[31]  If the claimant is still able to do her past work, the

claimant is not disabled.[32]  If the claimant cannot perform her past work, the Commissioner

moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities,

age, education, and work experience, to do other work.[33]  If the claimant cannot do other work,

she will be found disabled.  The claimant bears the burden of proof at the first four steps of the

---

[25]20 C.F.R. §§ 404.1520 and 416.920.

[26]*Id.*

[27]*Id.*

[28]*Id.*

[29]*Id.*

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Id.*

sequential analysis.[34]  Once the claimant has shown that she is unable to perform her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account her exertional and nonexertional limitations, able to maintain for a significant period of time.[35]  If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that she is unable to perform the alternative work.[36]

## B. Findings and Conclusions of the ALJ

In the instant case, the ALJ reached his decision at step two of the evaluation process.  At step one, the ALJ determined that Gres had done no substantial gainful work since her alleged on-set date.[37]  At step two, the ALJ determined that Gres has dysthymic/depressive disorder[38] and anxiety disorder.[39]  The ALJ determined that because Gres does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit)

---

[34]*Leggett*, 67 F.3d at 564.

[35]*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[36]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

[37]SSA record, p. 11.

[38]"The essential feature of Dysthymic Disorder is a chronically depressed mood that occurs for most of the day more days than not for at least 2 years. . . ." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 376 (4th ed., text revision, 2000) (hereinafter DSM-IV-TR).

[39]The *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) lists several anxiety disorders.  The ALJ did not specify Gres's particular anxiety disorder.  On February 21, 2008, Dr. Enriquez indicated that Gres has "anxiety disorder not otherwise specified."  "This category includes disorders with anxiety or phobic avoidance that do not meet criteria for any specific Anxiety Disorder, Adjustment Disorder With Anxiety, or Adjustment Disorder With Mixed Anxiety and Depressed Mood."  DSM-IV-TR, p. 484.

the ability to perform basic work related activities for 12 consecutive months, Gres does not have a severe impairment or combination of impairments.[40] The temporal aspect of this finding is significant because a claimant must have a severe impairment for at least 12 months in order to be found disabled.[41] Analysis under the five-step process stops if the ALJ finds that the claimant does not have a severe impairment.

## C. Gres's Allegations of Error

Gres maintains the ALJ erred by determining her mental impairment is not severe. Gres relies on the Global Assessment of Functioning (GAF) score given by Dr. John N. Enriquez.[42] Dr. Enriquez began treating Gres on August 6, 2007—two days before Gres applied for DIB and SSI. On February 21, 2008, Dr. Enriquez completed a psychiatric/psychological impairment questionnaire and opined that Gres was unable to work due to anxiety, irritable mood, suspiciousness, depressed mood and compulsive eating. Dr. Enriquez assessed a GAF score of 49. The GAF scale is "used by a clinician to assess a patient's psychological, social, and occupational functioning."[43] A score of 49 equates to "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social,

---

[40]SSA Record, at p. 11.

[41]See 42 U.S.C. § 1382c(3)(A) ("[A]n individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.").

[42]Docket entry # 16, p. 7.

[43]J.E. Schmidt, M.D., Attorney Dictionary of Med. 3-112934 (Matthew Bender 2005).

occupational, or school functioning (e.g., no friends, unable to keep a job)."[44]

The Commissioner's regulations define a severe impairment as one that significantly limits the claimant's physical or mental ability to do basic work activities.[45] "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."[46] "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."[47] Although Gres suggests the ALJ did not apply these standards,[48] the ALJ recited the standards in his decision.[49] In determining that Gres's mental impairment is not severe, the ALJ wrote: "The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months. . . ."[50]

If the ALJ determines the claimant has a medically determinable mental impairment, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of

---

[44]DSM-IV-TR, p. 34.

[45]*See* 20 C.F.R. §§ 404.1520(c), 416.921(a).

[46]20 C.F.R. §§ 404.1521(a), 416.921(a).

[47]*Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (citation omitted; alteration included).

[48]Docket entry # 16, p. 8 ("Because the Commissioner has failed to apply and follow the proper standard, the decision is not based upon substantial evidence and should be reversed.")..

[49]SSA record, p. 10.

[50]*Id*. at p. 11.

the impairment and document the ALJ's finding.[51]  Here, the ALJ specified the symptoms, signs, and laboratory findings that substantiate the presence of Gres's impairment: The ALJ observed that Gres told Dr. Enriquez that she had crying spells and anxiety.  Gres also reported having stressors due to family members with mental illness.  Dr. Enriquez found that Gres can calculate and that she experienced no abnormal thinking process, hallucinations, delusions, or suicidal ideation.  The ALJ observed that Gres told Dr. Enriquez that she *was able* to work, but that her husband's condition worsened.[52]

After specifying the symptoms, signs, and laboratory findings substantiating the presence of a mental impairment, the ALJ must rate and record the degree of functional limitation resulting from the impairment based on four areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.[53]  The following passage from the ALJ's opinion shows that the ALJ accomplished this task.

> The first functional area is activities of daily living.  In this area, the clamant has no limitation.  The next functional area is social functioning.  In this area, the claimant has mild limitation.  The third functional area is concentration, persistence or pace.  In this area, the claimant has mild limitation.  The fourth functional area is episodes of decompensation.  In this area, the claimant has experienced no episodes of decompensation.  Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional area and "no" limitation in the fourth area, they are nonsevere . . . .[54]

---

[51]20 C.F.R. §416.920a(b)(1).

[52]When Gres applied for benefits, she stated that she stopped working because her son was ill and she had to stay home to care for him, SSA record, p. 77; but she testified during the hearing before the ALJ that she quit working to avoid being fired, *id*. at p. 147.

[53]20 C.F.R. §416.920a(c).

[54]SSA record, p. 13.

Because the ALJ rated the required areas, the next question is whether substantial evidence supports the ratings.

    Activities of daily living.  "*Activities of daily living* include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [personal] grooming and hygiene, using telephones and directories, and using a post office."[55]  Gres testified that she has three small children and a common law husband, all who have mental impairments.  Two of the children and the husband receive disability benefits for mental impairments.  Gres testified that she had applied for disability benefits for the third child, but had not yet received them.  When Gres applied for benefits for herself, she stated that she walks the children to school; takes the children to medical appointments; participates in  her son's ARD meetings;[56] prepares meals for her family; cleans the family apartment; takes the children to the park, school plays and banquets; drives to the grocery store; and does the laundry.[57]  Gres testified that she drives the car most days.[58]  She stated that she tailgates a lot because the other drivers do not move fast enough, but she thinks it was safe for her to drive.[59]  This evidence supports the ALJ's determination that Gres has no limitation in the area of daily activities because it shows that Gres can perform the activities

---

[55]20 C.F.R. pt. 404, subpt. B, app. I,§ 12.00C1.

  [56]Parents of special education children participate in meeting of the admission, review, and dismissal (ARD) committee.  The ARD committee is responsible for making the educational decisions for a student.

[57]SSA record, pp. 65-67.

[58]*Id*. at p. 141.

[59]*Id*. at p. 152.

needed to care for herself and her family and to travel about the community and can get along with others like grocery clerks, teachers and school administrators.

Social functioning. "Social functioning refers to the claimant's capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers."[60] When Gres applied for benefits, she indicated that she doesn't like being in crowds and that she often thinks that people are talking about her.[61] She stated that she gets nervous around people and starts to sweat.[62] Gres told Dr. Enriquez that she felt social anxiety and she feels people are watching her.[63] Gres testified that she can't go around people and that she wants to run from everything.[64] This evidence supports the ALJ's determination that Gres has mild limitation in social functioning because it indicates she has difficulty in social settings but yet copes with social settings involving the care of her children (*e.g.*, taking the children to the park, school plays and banquets).

Concentration, persistence or pace. "Concentration, persistence or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."[65] The ALJ determined that

---

[60]20 C.F.R. pt. 404, subpt. B, app. I,§ 12.00C2.

[61]SSA record, p. 65.

[62]*Id.*

[63]*Id.* at p. 91.

[64]*Id.* at p. 148.

[65]20 C.F.R. pt. 404, subpt. B, app. I,§ 12.00C3.

Gres is *mildly* limited in concentration, persistence or pace, but two medical professionals opined that Gres is *moderately* limited in this area.

Completing a psychiatric/psychological impairment questionnaire on February 21, 2008, Dr. Enriquez opined that Gres was moderately limited in the abilities to maintain attention and concentration for extended periods, to perform activities within a schedule, to complete a normal workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.[66] The ALJ did not give this opinion controlling weight or substantial weight because the ALJ found that the medical and non-medical evidence as a whole does not support the opinion.[67] The ALJ was correct about this assessment of the evidence. Dr. Enriquez's treatment notes consist of five pages,[68] covering visits on three days—on August 6, 2007; August 30, 2007; and September 26, 2007. Although Dr. Enriquez indicated on the psychiatric/psychological impairment questionnaire that he treated Gres monthly, the record contains no treatment notes for the time period between September 26, 2007 and February 21, 2008 (the date Dr. Enriquez completed the questionnaire). The stressors in Gres's life—a mentally disabled family living on government support[69]—supports the ALJ's determination that Gres is mildly impaired in her ability to maintain concentration, persistence and pace. There is nothing in Dr. Enriquez's treatment notes indicating that Gres is moderately

---

[66]*Id*. at p. 109.

[67]*Id*. at p. 12.

[68]*Id*. at pp. 89-93.

[69]*See* docket entry # 1, p. 2 (indicating that she receives $2, 044/month ); SSA record, p. 64 (indicating that she lives in subsidized housing); SSA record, p. 137 (testifying that she receives food stamps).

limited.

Dr. Lee Wallace also opined that Gres was moderately limited in maintaining concentration, persistence or pace.[70] The ALJ did not discuss Dr. Wallace's assessment in the ALJ's opinion, but "an ALJ is not required to discuss *all* the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."[71] Unlike, Dr. Enriquez, Dr. Lee has never treated Gres. After reviewing Gres's records, Dr. Wallace stated that Gres's "alleged limitations [are] not fully supported by the [evidence] as claimant is still capable of caring for children and spouse, cook, clean, drive, and attend scheduled appointments. [CLAIMANT] SUFFERING FROM A MOOD [DISORDER], YET NO MARKED FUNCTIONAL DEFICITS."[72]

"Limitations in concentration, persistence, or pace are best observed in work settings, but may also be reflected by limitations in other settings."[73] Because Gres has not worked since her alleged on-set date, other settings have significance. In other settings, Gres has demonstrated the ability to focus her attention and concentration on the completion of tasks required to care for a family with special needs. She cares for a husband with schizophrenia, a child with autism and attention deficit hyperactivity disorder, a child with anxiety and depression, and a child with

---

[70]*See* SSA record, p. 109 (opining that Gres is moderately limited in the abilities to maintain attention and concentration for extended periods, to sustain an ordinary routine without special supervision, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods).

[71]*Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (italics added).

[72]SSA record, p. 106.

[73]20 C.F.R. pt. 404, subpt. B, app. I,§ 12.00C3.

14

depression and bipolar disorder.  Certainly these challenges can limit a person's ability to sustain focused attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings, but Gres has demonstrated that ability.  In the past, she worked part-time as a child care attendant[74] and she cares for children now on a full-time basis.  She previously cleaned apartments to make them ready for move-in on a full-time basis[75] and she now cleans her apartment on a regular basis.[76]  Gres has demonstrated her ability to get her children to school, take her children and husband to medical appointments, attend ARD meetings, travel about the community, and complete numerous household chores for a family with special needs.  These tasks are commonly found in a variety of work settings. Notwithstanding evidence of Dr. Wallace's assessment, evidence of Gres's activities constitutes substantial evidence supporting the ALJ's determination that Gres is mildly limited in the area of concentration, persistence or pace.

Episodes of decompensation. The Commissioner's regulations provide the following about episodes of decompensation:

> *Episodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g.,

[74]SSA record, p. 68.

[75]*Id*. at. p. 68.

[76]*Id*.

hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.[77]

The record contains no evidence of decompensation. Dr. Enriquez's treatment notes reflect no significant alteration in medication. The treatment notes show an initial prescription for 10 milligrams of Prozac and 5 milligrams of Ambien on August 6, 2007,[78] and an adjustment on August 30, 2007, to 20 milligrams of Prozac.[79] Dr. Enriquez indicated on the psychiatric/psychological impairment questionnaire—on February 21, 2008—that Gres takes .5 milligrams of Clonazepam twice a day, 30 milligrams of Prozac in the morning, and 10 milligrams of Ambien at bedtime.[80] The treatment notes do not document any hospitalization or a need for a more structured psychological support system. The record includes notes for home visits by a counselor, but those notes indicate that Gres strives to get better so she can continue to care of her children.[81]

Substantial evidence supports the ALJ's determination that Gres does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work related activities for 12 consecutive months.

---

[77]20 C.F.R. pt. 404, subpt. B, app'x I,§ 12.00C4.

[78]SSA record, p. 93.

[79]Id. at p. 89. Gres's attorney stated that Gres's medications include .5 milligrams of Klonopin (for anxiety), 100 milligrams of Bupropion (for depression), and 20 milligrams of Prozac (for depression), and 10 milligrams of Ambien (for sleeping), but there is no medical note in the record reflecting these medications.

[80]Id. at p. 127.

[81]Id. at pp. 113-21.

Gres's daily activities indicate that her mental impairment does not significantly limit her ability to do basic work activities. The evidence suggests that Gres's family circumstances may prevent her from engaging in any substantial gainful activity, but the evidence does not indicate that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment. Gres is not disabled under the Act.

## Recommendation

Because the ALJ made no error of law and because substantial evidence supports the ALJ's determinations, I recommend DENYING Gres's request for relief (docket entry # 3) and AFFIRMING the Commissioner's decision.

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[82] **Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.** A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de*

---

[82] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

*novo* determination by the district court.[83]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[84]

    **SIGNED** on December 14, 2009.


                                        *Nancy Stein Nowak*
                                        NANCY STEIN NOWAK
                                        UNITED STATES MAGISTRATE JUDGE

---

[83]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[84]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).